## Anderson's Administrator v. Darland.

(Decided October 28, 1921.)

### Appeal from Pulaski Circuit Court.

1. Gifts—Inter Vivos.—To make valid a gift inter vivos there must be an intention to transfer title to the property as well as a delivery by the donor and an acceptance by the donee. Mere intention to give without delivery is unavailing and delivery is insufficient unless made with an intention to give.

2. Gifts—Inter Vivos.—To establish a gift inter vivos there must be a preponderance of clear, explicit and convincing evidence in support of every element needed to constitute a valid gift, and this rule is exceptionally applicable where the gift is not asserted until

after the donor's death and where a confidential relationship existed between the parties.

3.   Gifts—Inter Vivos.—The delivery may be actual, constructive or symbolical, but the fact the private secretary of the owner of a large sanitarium carried the keys to a room which donor continued to use as his bed room, and to a room in which groceries were kept for use in the sanitarium, and to her own bedroom is of but little probative value, and even when considered in connection with statements of the owner that he gave or had given the contents of these rooms to her is insufficient to prove a delivery that will sustain a gift inter vivos.

4.   Gifts—Question for Jury.—Proof as to gift of the contents of the parlor and an automobile held to present a question of fact for decision by a jury.

CHRIS L. TARTAR for appellant.

W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

Prior to January 1, 1917, J. S. Anderson, a negro man who claimed to be an "Indian herbalist," bought a farm near Somerset, Ky., and erected thereon a three story sanitarium containing sixty-five rooms. In February, 1917, the appellee, Dessie Darland, a white woman, entered the sanitarium as a patient but some time thereafter accepted employment at $100.00 per month as Anderson's secretary and remained in the sanitarium in that capacity until his death November 19, 1919. After the death of Anderson, the appellant, M. L. Jarvis, was appointed and qualified as curator of his estate and later as his administrator with the will annexed. As curator, he took possession of and had appraised as the property of deceased all of the personal property in and about the sanitarium. Thereupon appellee instituted this action of claim and delivery pursuant to sections 180-193 of the Civil Code and recovered possession from appellant under an order of delivery of an automobile, a typewriter, the furniture that was in her room and that in the parlor and the back parlor and the contents of a grocery store located in the basement of the sanitarium, the alleged value of which was $2,219.50.

In the first paragraph of his answer defendant denied plaintiff's alleged ownership and that his possession was wrongful. In a second paragraph, he alleged that all of the property claimed by the plaintiff was owned by and in possession of Anderson when he died and that same rightfully came into possession of defendant as

curator, etc. In the third paragraph of the answer it is averred that Anderson purchased and paid for all of this property; that he at all times thereafter retained possession thereof and was insolvent; that no consideration ever passed to him from plaintiff for any of the property; that no transfer of same had ever been made or recorded from decedent to plaintiff and that any pretended gift of same by him to her was a fraud upon his creditors and void.

The material allegations of the answer were traversed by reply and upon a trial at the conclusion of all the evidence a verdict was directed in favor of plaintiff and defendant is appealing from the judgment entered in accordance therewith.

The only proof introduced by plaintiff tending directly to sustain her claim of ownership is that of her two sisters, Mertie and Bertha. The former testified that she was matron of the sanitarium from July, 1917, until the death of Anderson and that she had heard him give to plaintiff the automobile, the contents of the front and back parlors and the grocery room in the basement; that plaintiff had purchased with her own money most of the contents of her own room, including the typewriter, and that she had heard the doctor give to plaintiff the other articles in her room; that the typewriter was used by plaintiff in the performance of her duties as secretary to Anderson; that the sanitarium was supplied with things needed from the grocery store, but that her sister frequently sold articles therefrom to others; that decedent continued to use the automobile occasionally until his death but only upon consent obtained from plaintiff; that prior to decedent's gift to plaintiff of the grocery store and furniture in the two parlors he had carried the keys to those rooms but thereafter plaintiff carried same and no one was permitted to enter them except by her consent; that when patients in the sanitarium and others desired to use the piano or enter either of the parlors and asked of Anderson the privilege to do so, he referred them to plaintiff; that she always carried the keys to her own room.

It is admitted by this witness that none of the articles claimed by plaintiff were ever removed from their customary places in the sanitarium; that the stock of groceries was exhausted and replenished by the doctor several times after the gift of same to plaintiff, and that the back parlor was used by Anderson as a bed room.

The testimony of plaintiff's sister, Bertha, who went to the sanitarium as drug clerk in July, 1918, and remained until Anderson's death, is to the same effect, except that she does not claim to have heard the doctor give any of these articles to plaintiff but that he had frequently told her he had done so and that they were hers. This was all the testimony for the plaintiff except that of herself, which for the most part recited merely her duties and services as secretary to Anderson, although a part of it, to which no objection was interposed, was incompetent since it tended indirectly at least to sustain her claim. See Keene's Extrx. v. Newton, 192 Ky. 6.

The defendant testified that Anderson was in full possession and control of the sanitarium at the time of his death; that he found all of the articles claimed by plaintiff in the sanitarium when he took possession of same as curator and that he accordingly took possession of same and had them appraised as the property of the decedent; that plaintiff then claimed the property here involved, but that the only answer she would give when asked how she came into possesion of same was " they are mine" and would make no further explanation.

Defendant was not permitted to state whether or not decedent at the time of his death was insolvent as it is made to appear he was by an avowal. Of this ruling of the court complaint is now made. This evidence, however, was clearly incompetent since it referred to a time more than two years subsequent to the time of the alleged gift and the court did not err in excluding it.

Other witnesses introduced by the defendant were not permitted to state they had heard Dr. Anderson say frequently that he had given the piano, grafonola and other articles in the parlor to his niece, Ruth Thompson; and of these rulings of the court defendant also complains. This evidence, in so far as it related to times subsequent to when plaintiff's witnesses had stated the property was given by the doctor to her was, we think, competent since it is of equal dignity and wholly inconsistent with and contradictory of much of the evidence introduced by plaintiff to sustain her claim of ownership.

But even without this evidence the facts and circumstances admitted by the witnesses for the plaintiff and testified to by witnesses for the defendant tend strongly to show that Anderson did not surrender to plaintiff absolute possession and control of the property now claimed by her and was abundantly sufficient to make the decision

of this essential fact a question for the jury. The rule is thoroughly established that, "to make a valid gift *inter vivos,* there must be an intention to transfer title to the property as well as a delivery by the donor and an acceptance by the donee. Mere intention to give without delivery is unavailing and delivery is insufficient unless made with an intention to give." The rule as to the weight and sufficiency of evidence in such cases is also settled. and is thus stated in 20 Cyc. 1223:

"As a general rule to establish a gift *inter vivos* there must be a preponderance of clear, explicit and convincing evidence in support of every element needed to constitute a valid gift. It is necessary to establish by this kind of evidence competency of donor, delivery, acceptance, and the parting by the owner with his control or right of domain over the subject of the gift. This rule is especially applicable where the gift is not asserted until after the donor's death and where a confidential relation existed between the parties."

As thus stated these rules have been expressly approved or applied by this court in the following recent cases: Stark v. Kelley, 132 Ky. 376, 113 S. W. 498; Foxworthy v. Adams, 136 Ky. 403, 124 S. W. 381; Dick v. Harris, 145 Ky. 739, 141 S. W. 56; Taylor v. Purdy, 151 Ky. 82, 151 S. W. 45; Reynolds v. Thompson, 161 Ky. 772, 171 S. W. 379; Goodan v. Goodan, 184 Ky. 79, 211 S. W. 423; Moore v. Shifflett, 187 Ky. 7, 216 S. W. 614, and Hale v. Hale, 189 Ky. 171, 224 S. W. 1078.

By reason of the confidential relationship that existed between deceased and the plaintiff as his secretary and this being a suit to acquire, not defend possession after the death of the alleged donor, it was certainly incumbent upon plaintiff to establish by clear, explicit and convincing evidence every element necessary to constitute a valid gift. Conceding the delivery may be actual, constructive or symbolical, yet in the relationship existing here, the fact that plaintiff carried the keys to the back parlor, which admittedly decedent continued to use as his bed room, and to the grocery store operated thereafter and until his death as a part of the sanitarium and to the room occupied by her as a bed room is of but little probative value, and even when considered in connection with her other evidence, is certainly not clear, explicit or convincing evidence that he had delivered to her exclusive possession or control of the furniture and supplies therein, or any possession or control inconsist-

ent with decedent's further use of same just as theretofore or that he intended so to do or that plaintiff so believed. We are, therefore, quite sure that she utterly failed to make out a case as to these articles.

As to the contents of the front parlor and the automobile, we have concluded, not, however, without much hesitation, that there was sufficient evidence for plaintiff to carry the case to the jury, since there is evidence that the doctor did not thereafter make any use of either except occasionally by permission of plaintiff, as heretofore pointed out. The evidence as a whole presents many facts and circumstances wholly inconsistent with and contradictory of the evidence that Anderson intended to give these articles to plaintiff and especially that he surrendered all control and dominion over them and delivered same to her.

The judgment is, therefore, reversed and the cause remanded for another trial consistent herewith.