## McWhorter v. Pitman's Administrator.

(Decided November 28, 1922.)

### Appeal from Graves Circuit Court.

1.  Work and Labor—Implied Contract—Uncle and Niece—Presumption—Services Rendered Decedent.—Where an uncle and niece live together in the same household and the services performed by the niece were not of an extraordinary and menial character, such as nursing one afflicted with a loathsome disease, the law regards such services as gratuitous, and no recovery therefor can be had unless an express contract be shown by stricter proof than is required in the case of an ordinary contract.

2.  Executors and Administrators—Services Rendered Decedent.—In an action against an administrator to recover for services rendered decedent and his wife, plaintiff's uncle and aunt, evidence held insufficient to show an express contract to pay for such services.

3.  Executors and Administrators—Services Rendered Decedent.—In an action against an administrator to recover compensation for services rendered decedent and his wife, plaintiff's uncle and aunt, evidence held insufficient to show that during the period the parties were not living together any services were performed for which the parties intended and expected that compensation should be paid.

W. H. HESTER and W. S. FOY for appellant.

HOLIFIELD & McDONALD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Josie McWhorter sued J. H. Coplen, administrator with the will annexed of H. R. Pitman, deceased, to recover the sum of $1,500.00, alleged to be due for services rendered the decedent and his wife. Her petition was dismissed and she appeals.

Appellant, who was the niece of H. R. Pitman and an orphan, lived with the Pitmans upon their farm in Graves county until she was about twenty-two years of

age. She then came to Mayfield where she obtained employment and married William Hedge. After her marriage she and Mr. Pitman became the joint owners of a fifty acre farm about three miles from Mayfield, on which there was a residence which they jointly occupied. At that time Mrs. Pitman was a helpless invalid and had to be rolled about in a chair. Appellant's husband was also an invalid, and she not only performed all the household duties but waited on him and Mrs. Pitman. After remaining there for a year or more, Mr. Hedge died, and appellant continued her services for about six months longer, when she moved into Mayfield and began working for the Mayfield Woolen Mills. Soon after appellant came to Mayfield, Mr. and Mrs. Pitman also located there, and appellant made her home with them for about two years. During that period she also performed the household and kitchen work, and nursed Mrs. Pitman. The Pitmans then moved to a place near the town of Wingo. During their absence appellant married her present husband, Charles McWhorter, and she and her husband went to live in the southwestern part of the city of Mayfield. Thereafter the Pitmans returned to Mayfield and purchased a home near the home of appellant where they lived until their death, Mrs. Pitman dying in 1917 and Mr. Pitman in 1919.

Appellant's claim for services covers not only the two periods when she and the Pitmans lived together on the farm and in Mayfield, but the period when the Pitmans lived by themselves in Mayfield, as well as the period between Mrs. Pitman's death and the death of the decedent It may be conceded that during the time appellant lived with the Pitmans, she not only performed the household work but was very attentive to Mrs. Pitman. But as the case is one where the parties were not only near relatives, but lived in the same household, and the services were not of an extraordinary or menial character, such as nursing a person afflicted with a loathsome disease, the law regards such services as gratuitous, and no recovery therefor can be had unless an express contract be shown by stricter proof than is required in the case of an ordinary contract. Humble v. Humble, 152 Ky. 160, 153 S. W. 249; Bolling v. Bolling's Admr., 146 Ky. 313, 142 S. W. 387, Am. Ann. Cas. 1913C 306; Allen v. Allen, 158 Ky. 760, 166 S. W. 211. While appellant proved that the decedent said to various witnesses that he did not

know what he and his wife would have done if it had not been for her; that she was his main dependence and he could not do without her; that he meant that she should be paid for it out of his estate; and that he told appellant to keep no account of what he owed her as she would get all he had at his death, this evidence must be weighed in the light of the fact that the testator not only conveyed his home to his nephew in consideration of the latter's agreement to nurse and take care of him, but also devised all of his property to the Presbyterian church at Wingo, and when so weighed it is not sufficient to show an express contract.

Coming to the last two periods when appellant did not live with the Pitmans, we are inclined to view the proof as insufficient to show that any services were rendered for which both parties intended and expected that compensation should be paid. While there was some evidence that she was frequently at the home of the Pitmans and performed services for them, it must not be overlooked that during that period she not only gave birth to five children, but was regularly engaged in the performance of her own work, and that during four years of the time the Pitmans employed a woman who did the household work and looked after Mrs. Pitman. Not only so, but many of the neighbors who were in a position to know say that appellant's services were few and far between, and that she did no more than the other neighbors, who frequently went to the home of the Pitmans and waited on them while there. On the whole, we see no reason to disturb the finding of the chancellor.

Judgment affirmed.