**J. W. DAWSON et al., Appellants,**

**v.**

**M. F. DAWSON'S ADMINISTRATRIX**
**(Cora L. Dawson), Appellee.**

Court of Appeals of Kentucky.

Nov. 5, 1954.

Lawrence F. Speckman, Louisville, for appellants.

Brown, Eldred, Brown & Tachau and Chas. B. Tachau, Louisville, for appellee.

CULLEN, Commissioner.

In an action brought by the administratrix of the estate of M. F. Dawson, against Dawson's children by his first marriage, a declaration was sought as to the validity and effect of three holographic writings found in Dawson's lock box after his death. The court rejected the contention of the children that the writings created trusts, and adjudged that the writings were testamentary in character and as such were revoked by the subsequent marriages of Mr. Dawson. KRS 394.090.

On this appeal the children maintain that the writings created valid trusts.

Mr. Dawson died in February 1953. Among the papers found in his safety deposit box after his death was one dated June 10, 1926, which reads as follows:

"My Darling wife Josie Mayer Dawson Died June 7th 1925 and She had ask me on several ocasions about making a will. so I ask our Lawer Ben F. Gardner a bout it he said as I had Children and the Property was in both of our names and when She Died she had Forfeited all right to Her claim. so I did let it go at that. but the next year I was thinking about getting Married and I called my 3 larger children together and talked to them about it Anna May. Alice. and Johney. and the other 2 James and Margret were still small so so we agreed to just let it go untill my

Death. I then told them at I had $25000.00 Twenty five thousand Dollars of their Mothers Money, so I justly and honestly owe them this sum of Money and if I have it at the time of my Death I want it paid

"M. F. Dawson"

The chancellor was of the opinion that the foregoing instrument did not create a valid trust because the subject matter of the trust was neither definite nor definitely ascertainable. He relied upon Ridley v. Shepard, 293 Ky. 91, 168 S.W.2d 550.

It is our opinion that the chancellor reached a correct conclusion. The subject matter of the alleged trust was not an earmarked or segregated fund, but merely a sum of money to be realized out of Dawson's estate after his death. The conclusion that such a subject matter is not sufficiently definite is supported not only by the Ridley case, but by Drake v. Security Trust Co., 203 Ky. 733, 263 S.W. 4; Brown v. Brown's Adm'r, 129 Ky. 138, 110 S.W. 831; and Restatement of the Law of Trusts, sec. 76.

A further reason for holding that the instrument did not create a valid trust lies in the fact that Mr. Dawson retained absolute control over the subject matter of the trust during his lifetime. In Restatement of the Law of Trusts, section 57, subsection (3) the rule is stated to be:

"(3) Except as stated in Sec. 58, where the settlor declares himself trustee and reserves not only a beneficial life estate and a power to revoke and modify the trust but also a power to deal with the property as he likes as long as he lives, the intended trust is testamentary."

The appellants maintain that the instrument created a "tentative trust". Hale v. Hale, 313 Ky. 344, 231 S.W.2d 2. However, it is clear from the Hale case, and from Restatement of the Law of Trusts, sec. 58, that the doctrine of ten-

tative trusts applies only to saving deposits in banks.

In addition to the instrument above discussed, there were two other writings found in Mr. Dawson's safety deposit box. One was affixed to a $5,000 stock certificate of the Portland Federal Savings and Loan Association, and reads as follows:

"Feb. 1th 1950 this $5,000 five thousand was bought J. W. Dawson and Positively to be his only.

"M. F. Dawson"

The other was attached to a $5,000 stock certificate of the South End Federal Savings and Loan Association, and is identical in wording except it has the name "Anna May Eiche" in place of the name of "J. W. Dawson". The two named persons are children of M. F. Dawson.

The chancellor was of the opinion that these two writings did not create valid trusts because they did not pass any present interest. Again we concur with the chancellor.

It seems apparent that Mr. Dawson could have had only one of the following three things in mind: (1) To pass an absolute title to the named beneficiaries immediately; (2) to pass an absolute title to the named beneficiaries only upon his death; or (3) to pass some kind of present beneficial interest, less than absolute title, with full title to vest at his death.

The first intent could not be effective, because a gift inter vivos requires a delivery. Biehl v. Biehl's Adm'x, 263 Ky. 710, 93 S.W.2d 836. The second intent could not be effective, because a gift to take effect at the death of the donor is valid only if it is made by a will, Todd v. Williams Adm'x, 264 Ky. 788, 95 S.W. 2d 593; or made in expectation of imminent death. Moore v. Shifflet, 187 Ky. 7, 216 S.W. 614.

The writings cannot be upheld as trusts on the theory that Mr. Dawson had the third intent mentioned above, because there is nothing in the writings, or in Mr. Dawson's actions, to indicate that he had any such intent. As a practical matter, he retained possession of the alleged trust assets, the absolute power to revoke the trust, and the power to deal with the property as he chose during his lifetime. Restatement of the Law of Trusts, sec. 57 (3). He did not in terms declare himself as trustee, or use any language or perform any act suggesting an intent that the named beneficiaries should receive some kind of present interest, less than absolute title. There was no *manifestation of intention* to create a trust, such as there was in De Leuil's Ex'rs v. De Leuil, 255 Ky. 406, 74 S.W.2d 474, upon which the appellants rely. In the De Leuil case the donor rented a safety deposit box in the name of the beneficiary, and told the bank officials that the contents of the box were intended to be for the named beneficiary. There was evidence of intent to pass a present interest. In the instant case there is no such manifestation of intent.

The appellants contend that the stock certificate writings should be upheld as tentative trusts, but as previously pointed out in this opinion, the doctrine of tentative trusts applies only to savings deposits in banks.

The judgment is affirmed.